No. 18.—LICHTEN & BACKER, plaintiffs in error, *vs.* RANDOLPH L. MOTT, defendant in error.

[1.] For the purpose of fixing bail, the *ca. sa.* against the principal must be returned to the next succeeding term of the Court from which it issued.

[2.] No intermediate return is sufficient to fix the bail, neither can it be regarded as the return required by law.

[3.] If the pleadings show that the *ca. sa.* was *in fact* returned into the Clerk's office by the Sheriff, with an entry of *non est inventus* thereon, several weeks before the term of the Court to which it is made returnable, it constitutes a good defence to the *scire facias* sued out against the bail.

[4.] During the time that intervenes between the *test* and *return* of the *ca. sa.* it must remain in the officer's hands, subject, if practicable, to be executed.

*Scire facias,* in Muscogee Superior Court. Decision by Judge IVERSON, May Term, 1851.

Lichten & Backer sued out bail process against Benjamin Hurd, and Randolph L. Hurd became his bail. At November Term, 1846, judgment was obtained and a *ca. sa.* issued against Hurd, returnable to the May Term, 1847. On 21st of April, 1847, the Sheriff made a return of *non est inventus.* On 22d April, 1850, *sci. fa.* was sued out against Mott, the bail, in which it was averred that the *ca. sa.* was returned by the Sheriff, into office, on the 21st April, 1847.

On the trial of the *sci. fa.* defendant (Mott) objected to the *ca. sa.* and return going in evidence, on the ground (among others) that the *ca. sa.* was returned by the Sheriff into Court, before the May Term, to which he was required to return it.

The Court sustained the objection, and this is assigned as error. Other errors were assigned upon the record, but as they were not considered by the Supreme Court in their decision, it is unnecessary to state them.

THOMAS and DOWNING, for plaintiffs in error.

B. HILL and H. HOLT, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Litchten & Backer, a mercantile firm in Columbus, brought suit against Benjamin Hurd, on a promissory note, to which bail process was attached; Randolph Mott became the bondsman of Hurd. After judgment against the principal, and a *ca. sa.* and return of *non est* thereon, a *sci. fa.* was sued out to charge the bail. At the trial, several objections were taken to the proceedings, one of which only, it is necessary to consider. It was alleged in the *sci. fa.* that the *ca. sa.* was returned to the Clerk's office on the 21st day of April, 1847, the day in which the entry of *non est inventus* was made, and the defendant insisted that the *ca. sa.* being returnable to the May Term, 1847, of Muscogee Superior Court, the Sheriff should have retained the process until that time, for the purpose, if practicable, of executing it; and so the Circuit Court decided. And to reverse this judgment, this writ of error is prosecuted.

This case presents certainly a very interesting question, and has received that attention which its practical importance demands.

[1.] The first question to be determined is, what is the return day of an execution in this State?

Without going into the details of the English practice, as stated by *Sellon and Tidd,* or the reason for requiring the previous

proceeding against the principal, as explained in *Hunt vs. Coxe*, (3 *Burr*, 1360,) I would remark, that by the Laws of Georgia, all executions are made returnable to the next terms of the Courts, respectively, from which they issue.

The *ca. sa.* in this case, issued from the November Term, 1846, of the Superior Court, and commanded the Sheriff to arrest the body of Benjamin Hurd, the principal, and have it before the presiding Judge at the ensuing term of the Court, to be surrendered in discharge of the debt.

By the Act of 1810, the different Sheriffs in this State are required to keep fair and regular execution dockets, wherein they shall enter all the executions delivered to them, and the dates of such delivery, together with all their dealings and doings therein, and file the same in the Clerk's office out of which such executions may have issued, "*on or before the first day of the meeting of the Court to which they may be made returnable,*" which said dockets shall remain in the said offices, subject to the inspection of all persons concerned." *New Digest*, 492.

[2.] If then, the *ca. sa.* was *in fact* returned to the Clerk's office, during the vacation and before the next term of the Court to which it was made returnable, and such is the averment in the writ, is the bail thereby discharged? In other words, can a return of *non est inventus* be made for the purpose of fixing the liability of the bail, before the return day mentioned in the *ca. sa.* itself?

In some of the States, where, by Statute, the liability of the bail is fixed by the return of *non est inventus*, it has been held, that the return within the time that the *ca. sa.* had to run, would not release the bail, provided there was a reasonable time allowed to surrender the principal, before such return was made. (1 *Verm.* 276. *Kirby*, 380.) And in support of this opinion, it may be argued, that in strictness the bond is forfeited by the neglect of the principal to appear at Court, but that the law, out of tenderness to the bail, has required that a *ca. sa.* should issue against the principal, and that there should be a return of *not to be found* on the execution. But, that the bail can have no just reason to complain, after his principal has neglected to appear at

Litchten and another *vs.* Mott.

Court, according to the tenor of the bond, after a search for the principal and after a return of *non est inventus* has been regularly made. At any rate, it is contended that it should appear that the bail was *injured* by the premature return of the *ca. sa.*

On the other hand, our Statute regulating proceedings against bail, is remedial, and should have a liberal construction in favor of bail. It provides that bail shall not be liable until a *capias adsatisfaciendum* shall first be issued on the final judgment against the principal, and he cannot be found. But it stops not here, but further enacts that the bail may surrender the principal in his discharge at or before the entering up of final judgment on the *scire facias,* either in open Court, in term time, or to the Sheriff of the County in which the principal may reside, at any time in vacation. *New Digest,* 478.

The true intent and meaning is, that the effort to arrest the principal, must be done reasonably, and not in a manner as is often practised, and calculated unfairly and unnecessarily to fix the bail. To prevent this, there should be a fixed and uniform rule as to the time of return, and that rule should be such as will give the bail all the time for the surrender of the principal, which will be consistent with the safety of the officer. For he never ought to be permitted to return a *ca. sa.* until his duty or his safety requires it; neither of which, I remark, required him to return this execution, as we have seen by the Act of 1810, until the first day of the next term of the Court to which it was returnable.

It is a mistake, to suppose that the issuing of the *ca. sa.* against the principal is a mere matter of form, for the purpose of charging the bail. The Sheriff is, in good faith, to endeavor personally to execute it within the six months which intervene between the test and the return of the precept; and a failure to perform his duty in this respect, constitutes, in our judgment, a substantial defence upon the trial, against the bail.

[3.] The law, then, requires that the Sheriff shall keep the *ca. sa.* in his hands, until the return day thereof, in order that he may arrest the principal, or that his bail may surrender him during vacation, in his discharge; and it being admitted by the pleadings, that the Sheriff had returned the *ca. sa.* into the Clerk's

office, several weeks before the return day, the presumption of law is, that the bail has been prejudiced. The direction of the process issued under authority of law, and not the discretion of the officer, or the caprice of the plaintiff, should be the measure of the party's rights.

[4.] For some purposes, under the legislation of this State, the *ca. sa.* may be returned before the term to which it is made returnable; as, for instance, where the defendant surrenders property under an arrest, the *ca. sa.* may be returned, and a *fieri facias* issued. And even where no arrest has been made, it may be returned, perhaps, within the six months, to take out an execution against the property. But no provision has been made authorizing this to be done, with a view to charge the bail; and the principle of the maxim, therefore, applies *expressio unius est exclusio alterius.*

In *Davitt vs. Connel,* (2 *Nott & McC.* 136,) Judge *Richardson* says, " the failure of the principal to pay or surrender, is vested by the executions issued; but to take them out for a moment only, would be a mockery. No actual search could be made. *I apprehend, then, that the execution must have remained with the Sheriff throughout the vacation, i. e. from the test to the return, before the bail becomes fixed.*"

In *Sanders vs. Bobo,* (2 *Bail.* 492,) Judge *Johnson* seems to have taken it for granted, that no return made by the Sheriff, before the *return day* of the *ca. sa.* could fix the liability of the bail, and that the Sheriff could not regularly make his return, until *the day* on which the *ca. sa.* is made returnable. He added, that he did not regard the return made *before* the *return day* of the *ca. sa.* as the return required by law, so far as it regarded *the term* when it was made. It did not fix the bail, *de jure,* nor could it do so, unless it was made on the return day of the *ca. sa.* For until that time, it was to remain in the hands of the Sheriff, subject, if practicable, to be executed.